RECORD NO. 13-2070

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

STANLEY M. GRABILL, JR.

*Plaintiff-Appellant*

v.

CORIZON, INC.

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION

———————

**BRIEF OF APPELLEE**

———————

PHILIP M. ANDREWS
MARY BETH SMITH
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030
pandrews@kg-law.com
msmith@kg-law.com

*Counsel for Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-2070         Caption: Stanley M. Grabill, Jr. v. Corizon, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Corizon, Inc. f/k/a Correctional Medical Services, Inc. ("Corizon")
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
   Corizon is a wholly owned subsidiary of Correctional Medical Services of Delaware, Inc. Correctional Medical Services of Delaware, Inc., is one hundred percent owned by Valitás Health Services, Inc. Valitás Health Services, Inc., is a wholly owned subsidiary of Valitás, Inc., which is wholly owned by Valitás Equity, LLC. None of these entities is public held.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Mary Beth Smith                            Date:    9/06/2013

Counsel for: Corizon, Inc.

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____9/06/2013_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Mary Beth Smith                                    9/06/2013
     (signature)                                         (date)

# TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table of Authorities ......................................................................... iii

Counter-Statement of Jurisdiction ................................................... 1

Issue Presented for Review .............................................................. 1

Counter-Statement of the Case ........................................................ 1

Counter-Statement of the Facts ....................................................... 2

Summary of the Argument ............................................................... 4

Argument .......................................................................................... 5

    I.     Standard of Review ............................................................... 5

    II.    Standard For Filing A Claim Under the Act ......................... 6

    III.   The District Court Correctly Granted Corizon's Motion to Dismiss. ... 8

        A.    The Certificate and Report fail to identify the applicable standard of care or how it was breached. .................................... 8

        B.    The Certificate and Report fail to identify any allegedly negligent health care providers. ............................................... 12

        C.    The district court correctly dismissed Grabill's complaint because Grabill failed to file a statutorily-compliant Certificate and Report. ........................................................... 21

Conclusion ...................................................................................... 21

Statement With Respect to Oral Argument ............................................................. 23

Certificate of Compliance With Fed. R. App. P. 32(a)(7) ...................................... 24

Certificate of Service.............................................................................................. 25

Addendum of Relevant Statutes.......................................................................Add. 1

## <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>

*Barber v. Catholic Health Initiatives, Inc.*, 180 Md. App. 409,
  951 A.2d 857 (2008) ................................................................ 18, 19

*Carroll v. Konits*, 400 Md. 167, 929 A.2d 19 (2007) ..................................... *passim*

*D'Angelo v. St. Agnes*, 157 Md. App. 631, 853 A.2d 813 (2004).................... *passim*

*Elnadi v. Upinder Singh, DDS, PC*, No. ELH-12-1762,
  2013 WL 1855977 (D. Md. Apr. 30, 2013) ............................................ 6

*Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281 (4th Cir. 2012)........................... 13

*Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104,
  453 A.2d 1198 (1983) ........................................................... 14

*Kearney v. Berger*, 416 Md. 628, 7 A.3d 593 (2010)..................................... *passim*

*Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999) .................................... 13

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ...................................... 13

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527 (4th Cir. 2013) .............. 5

*Walzer v. Osborne*, 395 Md. 563, 911 A.2d 427 (2006) ................................. 8, 12

*Webster v. Simmonds*, No. DKC-03-3306, 2005 WL 14886
  (D. Md. Jan. 3, 2005) ......................................................... 19, 20, 21

*Willever v. United States*, 775 F. Supp. 2d 771 (D. Md. 2011) ............................ 21

*Witte v. Azarian*, 369 Md. 518, 801 A.2d 160 (2002) ............................................ 8

Statutes:

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 1292 ..................................................................................1

The Maryland Health Care Malpractice Claims Act,
 MD. CODE ANN., CTS. & JUD. PROC. §§ 3-2A-01, *et seq.*.............................. *passim*

## COUNTER-STATEMENT OF JURISDICTION

Appellee Corizon, Inc. ("Corizon") concurs with the jurisdictional statement set forth in Appellant Stanley M. Grabill, Jr.'s ("Grabill") brief, with one exception. Grabill mistakenly states that this Court has jurisdiction pursuant to 28 U.S.C. § 1292 (governing interlocutory orders) instead of 28 U.S.C. § 1291 (governing final judgments). It is undisputed that Grabill's appeal is from a final Order dismissing the underlying action.

## ISSUE PRESENTED FOR REVIEW

Whether the district court was correct in granting Corizon's motion to dismiss because Grabill failed to file a sufficient certificate of qualified expert and report of attesting expert as required by Section 3-2A-04 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

## COUNTER-STATEMENT OF THE CASE

This action arises out of Grabill's allegation that Corizon's "agents, servants, and employees," App. 6, failed to provide him with appropriate medical treatment beginning in late 2004 in response to his complaints of abdominal symptoms. *See* Appendix ("App.") 6. Grabill's claim against Corizon is governed by the Maryland Health Care Malpractice Claims Act ("the Act"). *See* MD. CODE ANN., CTS. & JUD. PROC. §§ 3-2A-01, *et seq.*

Grabill initially filed his medical malpractice claim in the Health Care

1

Alternative Dispute Resolution Office ("HCADRO") on February 19, 2010. As a condition precedent to filing a claim governed by the Act in state or federal court, the plaintiff must file a Certificate of Qualified Expert ("Certificate") and Report of Attesting Expert ("Report"). *See.* MD. CODE ANN., CTS. & JUD. PROC., § 3-2A-04. Grabill filed a Certificate and Report of Lambert King, M.D. ("Dr. King") on December 20, 2012. *See* App. 10-12.

Grabill thereafter unilaterally waived arbitration and filed his complaint in the United States District Court for the District of Maryland on January 4, 2013. *See* App. 2, 5-9. In response, Corizon filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), asserting that the Certificate and Report did not satisfy the requirements under the Act. *See* App. 3. The district court granted Corizon's motion on August 1, 2013, and directed that the clerk close the case. *See* App. 21. Grabill noted an appeal on August 27, 2013. *See* App. 22.

## COUNTER-STATEMENT OF THE FACTS

Grabill, an inmate at the Maryland Correctional Institution in Hagerstown, Maryland, filed this medical malpractice action against Corizon on January 4, 2013. *See* App. 2, 5-9. According to the Complaint, on or about February 20, 2007, Grabill was diagnosed with colon cancer. *See* App. 7 at ¶ 11. Grabill alleges that "[i]n late 2004 and the early part of 2005, Mr. Grabill began to experience abdominal symptoms, including a change in bowel habits and bleeding

2

from the rectum." App. 6 at ¶ 7. Grabill further alleges that, in response to his complaints, "Drs. Aldana, Malik, and Ayalew, and other physicians and health care providers, all of whom were agents, servants, and employees of Corizon" "repeatedly reassured him that nothing serious was wrong, that he just had 'prostate problems', and that he needed 'bed rest'." App. 6-7 at ¶¶ 8, 9. According to Grabill, the providers "specifically failed and refused to send him to the hospital to have his condition investigated and diagnosed." App. 7 at ¶ 9. On or about February 20, 2007, Grabill was diagnosed with colon cancer. *Id.* at ¶ 11.

In support of his complaint, Grabill filed a Certificate and Report by Dr. King. Dr. King asserts that unidentified health care providers departed from the standard of care. *See* App. 10 ("[I]t is my opinion to a reasonable degree of medical probability that the care and treatment rendered to the patient, Stanley Morton Grabill, Jr. by physicians in the employ of Prison Health Services, Inc. and/or Correctional Medical Services, Inc. departed from applicable standards of care and that such failure was the proximate cause of some injury to Mr. Grabill."); *see also* App. 12 ("I am of the opinion that there were departures from standards of care by the agents, servants and employees of Correctional Medical Services, Inc. and/or Prison Health Services, Inc. in the care and treatment of Mr. Grabill that likely caused or contributed to injury to Mr. Grabill.").

3

Dr. King further asserts that the unidentified health care providers "departed from applicable standards of care and that such failure was the proximate cause of some injury to Mr. Grabill." App. 10. According to Dr. King, the unidentified providers breached the standard of care because "in early 2005, Mr. Grabill began to complain of changes in bowel habits, including pain and constipation, which symptoms were not significantly investigated." App. 12. Dr. King further asserts that "a more thorough investigation of Mr. Grabill's complaints should have been performed in early 2005, and that had such an investigation been performed, it likely would have revealed the presence of a developing colon cancer, allowing for more prompt intervention and treatment." *Id.*

## SUMMARY OF THE ARGUMENT

Dr. King's Certificate and Report are fatally defective for at least two reasons. First, Dr. King fails to identify the applicable standard of care, describe how the provider deviated from that standard, or explain how Grabill was harmed by the alleged deviation as required by the Act. *See* MD. CODE ANN., CTS. & JUD. PROC., § 3-2A-04(b)(1)(i)(1). Instead, Dr. King makes the vague and conclusory assertion that "a more thorough investigation of Mr. Grabill's complaints should have been performed in early 2005 . . . ." App. 12. Such an assertion is insufficient to satisfy the requirements set forth in the Act. *See Kearney v. Berger*, 416 Md. 628, 650, 7 A.3d 593, 605 (2010) (dismissing action because the

4

Certificate "does not explain what the standard of care was, what [the defendant] should have done to satisfy the standard of care, or any details at all about what happened when [the defendant] allegedly violated the standard of care." ).

Second, Dr. King does not identify any health care professionals that he believes deviated from the standard of care and purportedly caused Grabill harm. It is undisputed, however, that "Maryland law requires that the Certificate mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll v. Konits*, 400 Md. 167, 196, 929 A.2d 19, 36 (2007) (collecting cases).

Because a condition precedent to maintain this action has not been met − *i.e.*, filing a sufficient Certificate and Report − Maryland law required dismissal. Accordingly, this Court should affirm the district court's August 1, 2013 Order.

## ARGUMENT

### I.    Standard Of Review

The district court granted Corizon's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), after it determined that Grabill failed to file a sufficient Certificate and Report as required by Section 3-2A-04 of the Act.  A district court's decision on a motion to dismiss under Rule 12(b)(6) is reviewed *de novo*. *Vitol, S.A. v.*

5

*Primerose Shipping Co. Ltd.*, 708 F.3d 527, 543 (4th Cir. 2013).[1]

## II.    Standard For Filing A Claim Under The Act

The Act establishes mandatory procedures for filing and maintaining a civil action against a health care provider. The statute, enacted in 1974 in response to Maryland's first medical malpractice insurance crisis, was an attempt to limit the filing of frivolous malpractice claims and to require malpractice claims to be submitted to arbitration as a precondition to court action. *Carroll*, 400 Md. at 178, 929 A.2d at 26. It is clear from a plain reading of the original statute and the existing legislative history that the General Assembly intended the Act to screen medical malpractice claims before the court-filing of medical malpractice lawsuits. *Id.*

The Act was later amended to require malpractice plaintiffs to file a Certificate of a qualified expert that attests to the health care provider's departure

---

[1]    Grabill contends that "the filing of a Certificate of Merit and Report is a condition precedent to maintaining an action and is a jurisdictional issue," suggesting that Corizon's motion to dismiss should have been filed under Rule 12(b)(1) instead of Rule 12(b)(6). The filing of a Certificate and Report is not a jurisdictional issue, however, and Rule 12(b)(1) is not applicable. *See Elnadi v. Upinder Singh, DDS, PC*, No. ELH-12-1762, 2013 WL 1855977, at *2-3 (D. Md. Apr. 30, 2013) ("The Maryland Court of Appeals has made clear that certain requirements under the [Act] . . . are conditions precedent to the filing of a medical malpractice suit in court, but do not constitute a jurisdictional limitation.") (collecting cases). In *Elnadi*, Judge Hollander expressly remarked that it would be improper to consider the plaintiff's motion to dismiss for failure to comply with the Act's certificate and report requirements under Rule 12(b)(1). *Id.* at *3.

6

from the standard of care, and that the departure from the standard of care was the proximate cause of the claimed injury. *See* MD. CODE ANN., CTS. & JUD. PROC. , § 3-2A-04(b)(1)(i)(1). The amendment also requires that the Certificate be accompanied by a Report of the attesting expert. *Id.* at § 3-2A-04(b)(3)(i). The amendment strengthened the screening provisions of the Act and furthered the stated legislative purpose of weeding out frivolous malpractice suits by adding the Certificate and report requirements.

The penalty for failing to satisfy the Act's Certificate and Report requirements is mandatory dismissal. *Id.* at § 3-2A-04(b)(1)(i); *see also Carroll*, 400 Md. at 178, 929 A.2d at 26; *D'Angelo v. St. Agnes*, 157 Md. App. 631, 645, 853 A.2d 813, 822 (2004) ("The certificate of qualified expert is an 'indispensable step' in the arbitration process. It is so important that, if the certificate requirement is not followed, a circuit court action will be dismissed, *sua sponte*. And, failure to file a proper certificate is tantamount to having not filed a certificate at all.") (internal citations omitted). Just as a plaintiff in a medical malpractice action must file a legally sufficient complaint, he or she must also file a satisfactory Certificate and report or risk dismissal. *Carroll*, 400 Md. at 180, 929 A.2d at 27.

Maryland's appellate courts have made clear the requirements of a legally sufficient Certificate and Report. For example, a Certificate must contain a qualified expert's certification to two separate elements: (1) the health care

7

provider departed from appropriate standards of care; and (2) such a departure was the proximate cause of Claimant's alleged injury. *Id.* at 194, 929 A.2d at 35.

Additionally, the Certificate must explicitly name the licensed professional who purportedly departed from the standard of care. *Id.* at 196, 929 A.2d at 36 (citing *Witte v. Azarian*, 369 Md. 518, 801 A.2d 160 (2002)); *see also D'Angelo*, 157 Md. App. at 646, 853 A.2d at 822 (concluding that the expert's certificate must include the name of the licensed professional against whom the claims were brought because, without that information, "the certificate requirement would amount to a useless formality that would in no way help weed out non-meritorious claims"). The Report must also identify with specificity what the standard of care was and how the defendant health care provider departed from it. *Id.* at 197, 929 A.2d at 37; *see also Kearney*, 416 Md. at 649-50, 7 A.3d 605; *Walzer v. Osborne*, 395 Md. 563, 582, 911 A.2d 427, 438 (2006).

## III. The District Court Correctly Granted Corizon's Motion To Dismiss.

### A. The Certificate and Report fail to identify the applicable standard of care or how it was breached.

As the district court recognized, Dr. King's conclusory statements regarding the "applicable standards of care" fail to explain *how* the unidentified providers allegedly deviated from the standard of care or even what the standard of care required:

> The closest the report comes to stating a standard of care is to suggest that, in response to Plaintiff's complaints in 2005, Defendant's employees should have "significantly investigated" the problem and performed "a more thorough investigation." These statements do not succeed in describing a standard of care, because they do not identify the minimum steps that should have been taken in response to specific complaints.

App. 17. As the district court observed, "the allegation that the doctors did not *significantly* investigate the complaint is too vague to establish what steps the doctors took, what steps should have been taken, and why the steps they took were insufficient." *Id.* at n. 3 (emphasis in original).

The district court's conclusion was correct. It is well-established that "a claimant or plaintiff whose certificate fails to state the applicable standard of care and how the defendant allegedly departed from that standard of care is equivalent to a failure to satisfy the report requirement and, accordingly, renders the certificate insufficient." *Kearney*, 416 Md. at 650, 7 A.3d 605. In *Kearney*, the plaintiff filed a certificate authored by Max H. Cohen, M.D. (The plaintiff did not file a report.) Dr. Cohen's certificate provided, in relevant part, that:

> [i]t is my opinion that the care rendered fell below the standards of care applicable to the treatment of Mr. Kearney, who had malignant melanoma, and such deviation from the standards was the proximate cause of injury and damage to Mr. Kearney, who subsequently died as a result of the melanoma.

*Id.* at 634, 7 A.3d 596.

9

The Court of Appeals of Maryland affirmed the trial court's order dismissing the case because of the plaintiff's failure to satisfy the requirements of § 3-2A-04(b) of the Act, reasoning that the certificate "does not explain what the standard of care was, what [the defendant] should have done to satisfy the standard of care, or include any details at all about what happened when [the defendant] allegedly violated the standard of care." *Id.* at 650, 7 A.3d 605.

Similarly, in *Carroll*, the Court of Appeals of Maryland affirmed the trial court's order granting a motion to dismiss based on the plaintiff's failure to file a sufficient Certificate. In that case, the plaintiff's expert opined in her Certificate and Amended Certificate that there was a deviation from the standard of care because "there was no clear communication to the patient" regarding removal of a catheter. *Carroll*, 400 Md. at 197, 929 A.2d 37. The *Carroll* court found it "egregious" that "the Certificates failed to state what the standard of care was or *how* [the defendants] departed from it." *Id.* (emphasis in original).

According to the *Carroll* court, the skeletal Certificates left many unanswered questions:

> What was the standard of care expected of them? What duty did either have in regard to removing the catheter? Was Dr. Konits, the oncologist, supposed to remove the catheter, inserted surgically by Dr. Imoke, upon the termination of chemotherapy? Was he supposed to call Dr. Imoke to inform him that the chemotherapy had been completed? Was he supposed to tell Carroll to call Dr. Imoke? Was Dr. Imoke supposed to call Dr. Konits from time to time to check on

10

> the progress of the chemotherapy?  Was he supposed to call Carroll
> from time to time for that purpose?  Was he supposed to tell Carroll to
> call him when she completed chemotherapy?

*Id.*  Because the Certificate did not provide any explanation as to the requisite standard of care owed to the plaintiff, the *Carroll* court held that the Certificate did not "even come close to complying with the statutory requirement." *Id.* at 198, 929 A.2d 38.

Dr. King's Certificate and Report, just like the Certificates in *Kearney* and *Carroll*, fail to comply with the Act.  Dr. King does not provide any explanation as to what the standard of care required of the unidentified providers to "investigate" Grabill's complaints in 2004 and 2005.  Dr. King's certificate leaves open numerous questions:  for example, what standard of care was expected of the defendants; what duty the defendants had to investigate Grabill's complaints; and what the defendants should have done in Dr. King's medical opinion.

Grabill contends, nevertheless, that the "initial" Certificate does not need to be as specific as declared by the district court because Section 3-2A-06D of the Act provides that a supplemental Certificate must be filed within 15 days after the completion of discovery.  Simply because parties are required to file supplemental Certificates that are more specific than their initial Certificates does not negate the requirement that the certifying expert must attest to the departure of the standard of care in the initial Certificate.  *See* MD. CODE ANN., CTS. & JUD. PROC., § 3-2A-

11

04(b)(1)(i); *see also Kearney*, 416 Md. at 650, 7 A.3d at 605; *Carroll*, 400 Md. at 197-98, 929 A.2d at 38.

More importantly, the supplemental Certificate requirement has nothing to do with the requirement that the *Report* identify with specificity what the standard of care was and how the defendant health care provider departed from it. *See* MD. CODE ANN., CTS. & JUD. PROC., §3-2A-04(b)(3)(i); *see also Walzer*, 395 Md. at 583, 911 A.2d 439 (holding that the "the attesting expert report must explain how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate of qualified expert" because it would "help weed out non-meritorious claims and assist the plaintiff or defendant in evaluating the merit of the health claim or defense").

Because Dr. King's conclusory allegations do not even come close to identifying what the standard of care was or how the providers allegedly departed from it, Grabill failed to comply with the Act and the district court's dismissal of his complaint should be affirmed.

**B.    The Certificate and Report fail to identify any allegedly negligent health care providers.**

Although Corizon argued below that the Certificate and Report were also deficient because they failed to identify any allegedly negligent health care providers, Grabill fails to address this argument in his brief.  It appears that Grabill

12

believes that because the district court did not decide that argument, it is not relevant to Grabill's appeal. *See* Appellant's Brief at 10 ("The trial court did not rule on Corizon's first argument, but rather dismissed the Complaint on the basis of the second argument, alone").

It is well-established, however, that this Court "may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court." *Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999); *see also Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013) ("[I]t is well-settled that we 'review judgments, not opinions,' which allows us to 'affirm the district court on any ground that would support the judgment in favor of the party prevailing below.'") (quoting *Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281 (4th Cir. 2012)). Accordingly, even if this Court concludes that Dr. King's Certificate and Report sufficiently identify the standard of care and how it was breached (they do neither), this Court may affirm the district court's decision on the ground that the Certificate and Report fail to identify the purportedly negligent health care providers.

Dr. King does not identify any health care provider who purportedly departed from the standard of care. *See* App. 10, 12. It is undisputed that Corizon is not a "health care provider" as that term is defined in Section 3-2A-01 of the

Act.[2]  Corizon is not a licensed provider such as a hospital; instead, Corizon is a

corporation that employed or entered into contracts with health care providers to

supply health services to inmates in Maryland Prisons pursuant to contracts it had

with the State of Maryland.  *See* App. 2-3.  At best, Dr. King asserts that

unidentified "physicians in the employ of [Corizon]," App. 10, are the purportedly

negligent "health care providers" who violated the standard of care.[3]  But that

assertion still is not sufficient under the Act.

---

[2]     The term "health care provider" is defined as:

> a hospital, a related institution as defined in § 19-301 of the Health–
> General Article, a medical day care center, a hospice care program, an
> assisted living program, a freestanding ambulatory care facility as
> defined in § 19-3B-01 of the Health–General Article, a physician, an
> osteopath, an optometrist, a chiropractor, a registered or licensed
> practical nurse, a dentist, a podiatrist, a psychologist, a licensed
> certified social worker-clinical, and a physical therapist, licensed or
> authorized to provide one or more health care services in Maryland.

MD. CODE ANN, CTS. & JUD. PROC., § 3-2A-01(f).

[3]     Even though Corizon is not a "health care provider," Grabill's claim against
Corizon, which is based solely on Corizon's alleged vicarious liability for the
conduct of its unidentified health care provider employees, is nevertheless subject
to the provisions of the Act.  *See Group Health Ass'n, Inc. v. Blumenthal*, 295 Md.
104, 112, 453 A.2d 1198, 1203 (1983) (holding that even though a health
maintenance organization ("HMO") was not a "health care provider" as that term is
defined in the Act, plaintiff's claim against the HMO was based solely on a theory
of vicarious liability and because the HMO's employees were "health care
providers," the plaintiff's claim against the HMO was subject to mandatory
arbitration under the Act).

14

The Court of Appeals of Maryland has made clear that "Maryland law requires that the [plaintiff's] Certificate mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll*, 400 Md. at 196, 929 A.2d at 36 (collecting cases). The reason for that requirement is, as explained in *Carroll*:

> We believe that this requirement is consistent with the General Assembly's intent to avoid non-meritorious claims. Moreover, it is reasonable because the Certificate would be rendered useless without an identification of the allegedly negligent parties. When a Certificate does not identify, with some specificity, the person whose actions should be evaluated, it would be impossible for the opposing party, the HCADRO, and the courts to evaluate whether a physician, or a particular physician out of several, breached the standard of care.

*Id*, 929 A.2d at 36.

In *Carroll*, the certifying expert included in his Certificate the names of five different physicians, two of whom were named defendants. The certifying expert opined that the standard of care was breached because "there was no clear communication to the patient" regarding medical care, but the certifying expert "failed to state with sufficient specificity which physician or physicians breached the standard of care and which physician or physicians were allegedly responsible for [the plaintiff's] injuries." *Id.* at 196-97, 929 A.2d at 36-37. The *Carroll* court concluded that "the certificate was incomplete because it failed to specifically

15

identify the licensed professionals who allegedly breached the standard of care."
*Id.* at 201, 929 A.2d at 39.

Similarly, the Maryland Court of Special Appeals in *D'Angelo* upheld the
lower court's dismissal of a malpractice case in which the certifying expert failed to
identify the allegedly negligent health care providers. 157 Md. App. at 652, 853
A.2d at 826. In that case, the plaintiffs sued numerous physicians and alleged that
they had failed to diagnose and treat a plaintiff's medical condition. *Id.* at 638-39,
853 A.2d at 818. The plaintiffs' Certificates provided that "the foregoing medical
providers failed to comply with the standard of care and such failure was the
proximate cause of the injuries to the Claimant." *Id.* at 637, 853 A.2d at 817. The
caption of the Certificates identified only "St. Agnes Hospital" as the health care
provider. *Id.* at 636, 853 A.2d at 816. The reference within the Certificates to "the
foregoing medical providers" appeared to refer only to St. Agnes Hospital without
further reference to a licensed professional. *Id.* at 636-37, 583 A.2d at 817. The
trial court found that the Certificates were deficient because they failed to identify
a specific physician or other healthcare provider whose care was alleged to have
been negligent. *Id.* at 644-45, 853 A.2d at 821.

In affirming the trial court's decision dismissing the action, the Court of
Special Appeals rejected the argument that a Certificate is not required to
specifically name the person who allegedly violated the standard of care:

16

> [The plaintiffs] first argue that they were not required to file a
> certificate saying who violated the appropriate standard of care or
> whose action (or inaction) proximately caused medical injury.
> Although they do not say so specifically, they apparently interpret the
> Act as requiring the expert to certify that someone (as yet unknown)
> breached the applicable standard and that someone's deviation from
> the appropriate standard of care proximately caused medical injury.  If
> such an interpretation were sanctioned, the certificate requirement
> would amount to a useless formality that would in no way help weed
> out non-meritorious claims.

*Id.* at 645-46, 853 A.2d 822.  The *D'Angelo* court, therefore, rejected the plaintiffs'

"contention that the expert's certificate need not name the licensed professional

against whom the claims are brought."  *Id.* at 647, 853 A.2d at 823.

Just like the Certificates in *Carroll* and *D'Angelo*, Dr. King's Certificate and

report fail to identify any allegedly negligent health care providers.  Because the

Certificate and report refer generically to deviations of the standard of care by

"physicians in the employ of Prison Health Services, Inc. and/or Correctional

Medical services, Inc.[,]" undersigned counsel cannot identify the specific health

care providers who are claimed to have been negligent.  Certifying generally that a

corporation (who is not a health care provider) employed or contracted with health

care professionals whom the expert believes deviated from the standard of care is

not sufficient to comply with the mandatory requirements of Section 3-2A-04(b) of

the Act.  The individuals accused of deviating from the standard of care must be

identified to prevent the Certificate requirement from becoming "a useless

formality . . . ." *D'Angelo*, 157 Md. App. at 645-46, 853 A.2d at 821.

Corizon anticipates that Grabill will argue, as he did in the district court, that

Dr. King was not required to identify any of the health care providers by name. To

support his argument, Grabill relied on *Barber v. Catholic Health Initiatives, Inc.*,

180 Md. App. 409, 951 A.2d 857 (2008). To the extent Grabill continues to rely

on *Barber*, such reliance is misplaced.

In *Barber*, the plaintiffs sued six physicians and six business entities for

medical malpractice. 180 Md. App. at 412, 951 A.2d at 858. The plaintiffs filed a

Certificate that used the words "Health Care Providers" as a defined term to

include the 12 defendants. *Id.* at 423-24, 951 A.2d at 865. The plaintiffs also filed

affidavits by their certifying expert in which the expert asserted that the term

"Health Care Providers," as used in the Certificate, meant all of the licensed

professionals listed in the Statement of Claim. *Id.* at 425, 951 A.2d at 866. The

court concluded that the Certificate adequately identified all of the named

defendants, reasoning:

> To be sure, the Certificate, when read in isolation, did not explicitly
> identify the parties who allegedly violated the standard of care. But,
> by using the defined terms "Health Care Providers," coupled with the
> use of "et al.," the Certificate clearly referred to the Statement of
> Claim filed with the HCAO, on which appellants listed all the parties
> allegedly responsible for the death of Ms. Barber. When read with the

18

Statement of Claim, the Certificate unequivocally identified all of the appellees.

*Id.* at 434, 951 A.2d at 872.

Unlike *Barber*, Dr. King's Certificate and Report do not refer to any defined term indicating that he believes that all of the health care providers listed in the Statement of Claim violated the standard of care and caused injury to Grabill. Instead, Dr. King states:

> [I]t is my opinion to a reasonable degree of medical probability that the care and treatment rendered to the patient, Stanley Morton Grabill, Jr. by physicians in the employ of Prison health Services, Inc. and/or Correctional Medical Services, Inc. departed from the applicable standards of care and that such failure was the proximate cause of some injury to Mr. Grabill."

App. 10. That broad, generic statement is insufficient to satisfy the standard set forth in *Carroll*.

Grabill also relied on *Webster v. Simmonds*, No. DKC-03-3306, 2005 WL 14886 (D. Md. Jan. 3, 2005), to support his argument in the district court that identifying the individual health care providers by name is not required. But Grabill's reliance on *Webster* is misplaced. In *Webster*, Chief Judge Chasanow addressed whether identifying in the certificate only the corporate entity (Maternity Center Associates Ltd.) that employed nurses accused of negligence was sufficient. Contrary to Grabill's contentions, Chief Judge Chasanow stated that:

19

> While Plaintiffs may be correct that they may recover against a corporate employer for negligent acts of an employee, it does not follow that the certificate requirement is met merely by naming the employer. Rather, if the certificate requirement is only met by naming the health care provider as to whom it applies, it follows that a claimant is required to provide a certificate that names each health care provider separately.

2005 WL 14886 at *4.

Moreover, Grabill's argument conflicts with the statutory requirement that the certifying expert:

> [s]hall have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related filed of health care or in the field of health care in which the defendant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action.

MD. CODE ANN., CTS. & JUD. PROC., § 3-2A-02(c)(ii)(1)(A). Additionally, "if the defendant is board-certified in a specialty, [then the expert] shall be board certified in the same or a related specialty as the defendant." *Id.* at § 3-2A-02(c)(ii)(1)(B). As no business entity is licensed in a medical specialty, those provisions demonstrate that each Certificate must name one or more individual licensed professionals.

Simply put, Grabill was required to file a Certificate explicitly naming the licensed professional alleged to have departed from the standard of care; naming the corporate employer is not sufficient. *Carroll*, 400 Md. at 196, 929 A.2d at 36,

20

*Webster*, 2005 WL14886 at *4. Because Dr. King's Certificate and Report fail to identify the licensed professionals who allegedly deviated from the standard of care, those pleadings are fatally deficient.

### C.    The district court correctly dismissed Grabill's complaint because Grabill failed to file a statutorily-compliant Certificate and Report.

Satisfying the Act's Certificate and report requirement is a condition precedent to the maintenance of a medical malpractice action in state or federal court when the plaintiff is seeking damages that exceed the jurisdictional limit of the Maryland district court. *Carroll*, 400 Md. at 201, 929 A.2d at 29. *See also Willever v. United States*, 775 F. Supp. 2d 771, 784 (D. Md. 2011) ("Conditions precedent are not waivable because they are so fundamental to a plaintiff's right to bring a cause of action in the first instance. If a plaintiff fails to comply with [the Act's] expert certificate and report requirements, his case *must* be dismissed . . . . ") (internal citation omitted) (emphasis supplied). Accordingly, because Grabill failed to file a sufficient Certificate and Report, the district court's order should be affirmed.

### <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the judgment of the United States District Court for the District of Maryland.

Dated: December 10, 2013                 Respectfully submitted,


     /s/ Philip M. Andrews
Philip M. Andrews
Mary Beth Smith
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202-3201
(410) 752-6030 telephone
(410) 539-1269 facsimile
pandrews@kg-law.com
msmith@kg-law.com

Counsel for Appellee
Corizon, Inc.

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Appellee respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument would not aid the Court in reaching its decision.

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)</u>

1.     This brief comports with the type-volume limitation of Fed. R. App. P. 32(a)(7), because this brief contains 4,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief comports with the typeface requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2007.


_____/s/_____

Philip M. Andrews

Dated:  December 10, 2013

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2012, I caused the Brief of Appellee Corizon, Inc. to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

> Gregory Lockwood, Esq.
> Treanor, Pope & Hughes, P.A.
> 500 York Road
> Towson, Maryland  21204
>
> Counsel for Appellant

I further certify that on this 10th day of December, 2013, I caused eight copies of the Brief of Appellee Corizon, Inc. to be sent by Federal Express to the Clerk's Office of the United States Court of Appeals for the Fourth Circuit.


_____/s/_____
Philip M. Andrews

# ADDENDUM OF RELEVANT STATUTES

§ 3-2A-01. Definitions, MD CTS & JUD PRO § 3-2A-01

West's Annotated Code of Maryland
  Courts and Judicial Proceedings
    Title 3. Courts of General Jurisdiction--Jurisdiction/Special Causes of Action (Refs & Annos)
      Subtitle 2A. Health Care Malpractice Claims (Refs & Annos)

MD Code, Courts and Judicial Proceedings, § 3-2A-01

§ 3-2A-01. Definitions

Currentness

**In general**
(a) In this subtitle the following terms have the meanings indicated unless the context of their use requires otherwise.

**Arbitration panel**
(b) "Arbitration panel" means the arbitrators selected to determine a health care malpractice claim in accordance with this subtitle.

**Court**
(c) "Court" means a circuit court for a county.

**Director**
(d) "Director" means the Director of the Health Care Alternative Dispute Resolution Office.

**Economic damages**
(e) "Economic damages" retains its judicially determined meaning.

**Health care provider**
(f)(1) "Health care provider" means a hospital, a related institution as defined in § 19-301 of the Health--General Article, a medical day care center, a hospice care program, an assisted living program, a freestanding ambulatory care facility as defined in § 19-3B-01 of the Health--General Article, a physician, an osteopath, an optometrist, a chiropractor, a registered or licensed practical nurse, a dentist, a podiatrist, a psychologist, a licensed certified social worker- clinical, and a physical therapist, licensed or authorized to provide one or more health care services in Maryland.

  (2) "Health care provider" does not include any nursing institution conducted by and for those who rely upon treatment by spiritual means through prayer alone in accordance with the tenets and practices of a recognized church or religious denomination.

**Medical injury**
(g) "Medical injury" means injury arising or resulting from the rendering or failure to render health care.

**Noneconomic damages**
(h) "Noneconomic damages" means:

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 3-2A-01. Definitions, MD CTS & JUD PRO § 3-2A-01

(1) In a claim for personal injury, pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury; or

(2) In a claim for wrongful death, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education, or other noneconomic damages authorized under Subtitle 9 of this title.

**Credits**
Added by Acts 1976, c. 235, § 1, eff. July 1, 1976. Amended by Acts 1982, c. 770, § 4, eff. July 1, 1982; Acts 1982, c. 820, § 3, eff. Jan. 1, 1983; Acts 1990, c. 357, § 1, eff. July 1, 1990; Acts 1998, c. 698, § 1, eff. Oct. 1, 1998; Acts 2000, c. 131, § 1, eff. Oct. 1, 2000; Acts 2003, c. 371, § 1, eff. July 1, 2003; Acts 2004, 1st Sp. Sess., c. 5, § 1, eff. Jan. 11, 2005; Acts 2004, 1st Sp. Sess., c. 5, § 5, eff. Jan. 11, 2005.

Notes of Decisions (17)

(C) 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.
MD Code, Courts and Judicial Proceedings, § 3-2A-01, MD CTS & JUD PRO § 3-2A-01
The statutes and Constitution are current through all chapters of the 2013 Regular Session of the General Assembly.

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 3-2A-02. Claims against health care providers with..., MD CTS & JUD PRO...

West's Annotated Code of Maryland
  Courts and Judicial Proceedings
    Title 3. Courts of General Jurisdiction--Jurisdiction/Special Causes of Action (Refs & Annos)
      Subtitle 2A. Health Care Malpractice Claims (Refs & Annos)

MD Code, Courts and Judicial Proceedings, § 3-2A-02

§ 3-2A-02. Claims against health care providers with damages more than required jurisdictional amount

Effective: April 12, 2011

Currentness

**Application of subtitle**
(a)(1) All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

(2) An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle.

(3) Except for the procedures stated in § 3-2A-06(f) of this subtitle, an action within the concurrent jurisdiction of the District Court is not subject to the provisions of this subtitle.

**Statement of amount of damages**
(b) A claim filed under this subtitle and an initial pleading filed in any subsequent action may not contain a statement of the amount of damages sought other than that they are more than a required jurisdictional amount.

**Standard of practice among members of same health care profession**
(c)(1) In any action for damages filed under this subtitle, the health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

(2)(i) This paragraph applies to a claim or action filed on or after January 1, 2005.

(ii) 1. In addition to any other qualifications, a health care provider who attests in a certificate of a qualified expert or testifies in relation to a proceeding before a panel or court concerning a defendant's compliance with or departure from standards of care:

A. Shall have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the

§ 3-2A-02. Claims against health care providers with..., MD CTS & JUD PRO...

defendant's specialty or a related field of health care, or in the field of health care in which the defendant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action; and

B. Except as provided in subsubparagraph 2 of this subparagraph, if the defendant is board certified in a specialty, shall be board certified in the same or a related specialty as the defendant.

2. Subsubparagraph 1B of this subparagraph does not apply if:

A. The defendant was providing care or treatment to the plaintiff unrelated to the area in which the defendant is board certified; or

B. The health care provider taught medicine in the defendant's specialty or a related field of health care.

**Construction with Maryland Rules**
(d) Except as otherwise provided, the Maryland Rules shall apply to all practice and procedure issues arising under this subtitle.

**Credits**
Added by Acts 1976, c. 235, § 1, eff. July 1, 1976. Amended by Acts 1981, c. 588, § 1, eff. July 1, 1981; Acts 1986, c. 640, § 1, eff. July 1, 1986; Acts 1987, c. 11, § 1, eff. April 2, 1987; Acts 1987, c. 596, § 1, eff. July 1, 1987; Acts 1990, c. 357, § 1, eff. July 1, 1990; Acts 1993, c. 9, § 1, eff. July 1, 1993; Acts 1998, c. 21, § 1, eff. April 14, 1998; Acts 2004, 1st Sp. Sess., c. 5, § 1, eff. Jan. 11, 2005; Acts 2011, c. 65, § 1, eff. April 12, 2011.

Notes of Decisions (102)

(C) 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.
MD Code, Courts and Judicial Proceedings, § 3-2A-02, MD CTS & JUD PRO § 3-2A-02
The statutes and Constitution are current through all chapters of the 2013 Regular Session of the General Assembly.

End of Document                                             © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Add. 5

§ 3-2A-04. Claims filed with Director; selection of arbitrators, MD CTS & JUD PRO §...

West's Annotated Code of Maryland
  Courts and Judicial Proceedings
    Title 3. Courts of General Jurisdiction--Jurisdiction/Special Causes of Action (Refs & Annos)
      Subtitle 2A. Health Care Malpractice Claims (Refs & Annos)

MD Code, Courts and Judicial Proceedings, § 3-2A-04

§ 3-2A-04. Claims filed with Director; selection of arbitrators

Effective: March 22, 2007

Currentness

**Claims filed with Director**
(a)(1)(i) A person having a claim against a health care provider for damage due to a medical injury shall file the claim with the Director and, if the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physicians.

(ii) The Director shall cause a copy of the claim to be served upon the health care provider by the appropriate sheriff in accordance with the Maryland Rules.

(iii) The health care provider shall file a response with the Director and serve a copy on the claimant and all other health care providers named therein within the time provided in the Maryland Rules for filing a responsive pleading to a complaint.

(iv) The claim and the response may include a statement that the matter in controversy falls within one or more particular recognized specialties.

(2) A third-party claim shall be filed within 30 days of the response of the third-party claimant to the original claim unless the parties consent to a later filing or a later filing is allowed by the panel chairman or the court, as the case may be, for good cause shown.

(3) A claimant may not add a new defendant after the arbitration panel has been selected, or 10 days after the prehearing conference has been held, whichever is later.

(4) Until all costs attributable to the first filing have been satisfied, a claimant may not file a second claim on the same or substantially the same grounds against any of the same parties.

**Certificates of qualified experts**
(b) Unless the sole issue in the claim is lack of informed consent:

§ 3-2A-04. Claims filed with Director; selection of arbitrators, MD CTS & JUD PRO §...

(1)(i) 1. Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint; and

2. The claimant or plaintiff shall serve a copy of the certificate on all other parties to the claim or action or their attorneys of record in accordance with the Maryland Rules; and

(ii) In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim or action has expired; and

2. The failure to file the certificate was neither willful nor the result of gross negligence.

(2)(i) A claim or action filed after July 1, 1986, may be adjudicated in favor of the claimant or plaintiff on the issue of liability, if the defendant disputes liability and fails to file a certificate of a qualified expert attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury, within 120 days from the date the claimant or plaintiff served the certificate of a qualified expert set forth in paragraph (1) of this subsection on the defendant.

(ii) If the defendant does not dispute liability, a certificate of a qualified expert is not required under this subsection.

(iii) The defendant shall serve a copy of the certificate on all other parties to the claim or action or their attorneys of record in accordance with the Maryland Rules.

(3)(i) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

(ii) Discovery is available as to the basis of the certificate.

(4) A health care provider who attests in a certificate of a qualified expert or who testifies in relation to a proceeding before an arbitration panel or a court concerning compliance with or departure from standards of care may not devote annually more than 20 percent of the expert's professional activities to activities that directly involve testimony in personal injury claims.

(5) An extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted for good cause shown.

(6) In the case of a claim or action against a physician, the Director shall forward copies of the certificates filed under paragraphs (1) and (2) of this subsection to the State Board of Physicians.

Next

§ 3-2A-04. Claims filed with Director; selection of arbitrators, MD CTS & JUD PRO §...

(7) For purposes of the certification requirements of this subsection for any claim or action filed on or after July 1, 1989:

(i) A party may not serve as a party's expert; and

(ii) The certificate may not be signed by:

1. A party;

2. An employee or partner of a party; or

3. An employee or stockholder of any professional corporation of which the party is a stockholder.

**List of arbitrators**
(c)(1) Within 20 days after the filing of the claimant's certificate of a qualified expert, or, in a case in which lack of informed consent is the sole issue, within 20 days after the filing of the defendant's response, the Director shall deliver to each party the names of 6 persons chosen at random from the attorney categorical list prepared by him pursuant to § 3-2A-03(c) of this subtitle, together with a brief biographical statement as to each of these persons.

(2) No later than 20 days after receiving notice of the scheduled hearing, the Director shall deliver to each party the names of 6 persons chosen at random from each of the remaining categorical lists prepared by him pursuant to § 3-2A-03(c) of this subtitle, together with a brief biographical statement as to each of these persons. If the claim or the response states that the matter falls within one or more recognized specialties, the Director, if practicable, shall include persons in the specialty on the list from the health care provider category. Before delivering each list, the Director shall inquire of the persons selected and assure himself that they do not have a personal or economic relationship with any of the parties or their counsel, or any cases in which they are a party before the arbitration office, that can form the basis of any partiality on their part. If, in the judgment of the Director, a person selected has such a relationship with a party, his name shall be replaced by another chosen at random.

(3) The biographical statements sent to the parties under this subsection shall have been updated within 2 years.

**Objections to list of arbitrators**
(d)(1) Within 15 days after delivery of the list, a party may object in writing stating the reasons therefor to the inclusion of any arbitrator on the list. If the Director finds a reasonable basis for the objection, he shall replace the name of the arbitrator with the name of another arbitrator. Within 30 days after delivery of the initial list or, if an arbitrator is replaced, within 30 days after delivery of the replacement list, each party shall strike from the list in each category any name or names that are unacceptable and return a copy of the list with his strikes to the Director. Upon motion of either party, the panel chairman, for good cause shown and in conjunction with the Director, shall require that subsequent strikes be made in a lesser period of time. A party may not strike more than two names in any category.

(2) If:

(i) The claim is against more than one health care provider, whether directly by a claimant or as a result of a third-party claim, the health care providers claimed against shall be treated as a single party and shall exercise their strikes jointly;

§ 3-2A-04. Claims filed with Director; selection of arbitrators, MD CTS & JUD PRO §...

(ii) There is more than one claimant, the claimants shall be treated as a single party and shall exercise their strikes jointly;

(iii) Within the time period specified in paragraph (1) of this subsection, multiple claimants or multiple health care providers fail to agree on their strikes in any category, they shall notify the Director of their disagreement, and the Director may make the strikes on their behalf with respect to that category; and

(iv) Any party fails to return a copy of the list with his strikes within the time period specified in paragraph (1) of this subsection, the Director may make the strikes for that party.

**Selection of arbitrator**
(e)(1) The Director shall compare the lists returned to him and the lists from which he has stricken names pursuant to subsection (d) of this section, and shall select the first mutually agreeable person in each category as the arbitrators.

(2) The Director shall establish by regulation procedures for selection of alternates to serve in place of arbitrators unable to serve after appointment. Procedures for the selection of alternate arbitrators shall provide that alternate arbitrators are chosen at random from the categorical lists prepared by the Director under § 3-2A-03(c) of this subtitle, and may not be confined to time limitations in subsection (d)(1) of this section. The Director may require the attendance of an appropriate alternate at any proceeding under this subtitle.

**Agreement of parties regarding arbitrator**
(f)(1) The parties may, within the time for returning their lists to the Director, agree in writing upon a single arbitrator. In that event, they shall advise the Director in writing of their choice, and the one arbitrator shall constitute the arbitration panel.

(2) The Director shall prepare a separate list of qualified attorneys willing to serve as single arbitrators.

**Immunity of arbitrator**
(g) An arbitrator shall have the immunity from suit described under § 5-615 of this article.

**Credits**
Added by Acts 1976, c. 235, § 1, eff. July 1, 1976. Amended by Acts 1979, c. 332, § 1, eff. July 1, 1979; Acts 1979, c. 549, § 1, eff. July 1, 1979; Acts 1980, c. 439, § 1, eff. July 1, 1980; Acts 1981, c. 588, § 1, eff. July 1, 1981; Acts 1986, c. 640, § 1, eff. July 1, 1986; Acts 1986, c. 642, § 1, eff. July 1, 1986; Acts 1988, c. 6, § 1, eff. Feb. 18, 1988; Acts 1988, c. 26, § 1, eff. July 1, 1988; Acts 1988, c. 109, § 7, eff. July 1, 1988; Acts 1988, c. 138, § 1, eff. July 1, 1988; Acts 1988, c. 150, § 1, eff. July 1, 1988; Acts 1988, c. 291, § 1, eff. July 1, 1988; Acts 1989, c. 5, § 1, eff. March 9, 1989; Acts 1989, c. 688, § 1, eff. July 1, 1989; Acts 1990, c. 546, § 3, eff. Oct. 1, 1990; Acts 1997, c. 14, § 20, eff. April 8, 1997; Acts 1999, c. 164, § 1, eff. Oct. 1, 1999; Acts 2003, c. 252, §§ 1, 10, eff. July 1, 2003; Acts 2004, 1st Sp. Sess., c. 5, § 1, eff. Jan. 11, 2005; Acts 2006, c. 44, § 6, eff. April 8, 2006; Acts 2007, c. 5, § 1, eff. March 22, 2007.

Notes of Decisions (84)

§ 3-2A-04. Claims filed with Director; selection of arbitrators, MD CTS & JUD PRO §...

(C) 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.
MD Code, Courts and Judicial Proceedings, § 3-2A-04, MD CTS & JUD PRO § 3-2A-04
The statutes and Constitution are current through all chapters of the 2013 Regular Session of the General Assembly.

End of Document                                                          © 2013 Thomson Reuters. No claim to original U.S Government Works.

§ 3-2A-06D. Supplemental certificates of qualified experts, MD CTS & JUD PRO §...

West's Annotated Code of Maryland
   Courts and Judicial Proceedings
      Title 3. Courts of General Jurisdiction--Jurisdiction/Special Causes of Action (Refs & Annos)
         Subtitle 2A. Health Care Malpractice Claims (Refs & Annos)

MD Code, Courts and Judicial Proceedings, § 3-2A-06D

§ 3-2A-06D. Supplemental certificates of qualified experts

Currentness

**Application of section**
(a)(1) This section applies only to an initial complaint filed on or after January 1, 2005, for which a certificate of a qualified expert is required to be filed in accordance with § 3-2A-04 of this subtitle.

   (2) This section does not apply if the defendant admits liability.

**Supplemental certificate of a qualified expert required**
(b)(1) Within 15 days after the date that discovery is required to be completed, a party shall file with the court a supplemental certificate of a qualified expert, for each defendant, that attests to:

      (i) The certifying expert's basis for alleging what is the specific standard of care;

      (ii) The certifying expert's qualifications to testify to the specific standard of care;

      (iii) The specific standard of care;

      (iv) For the plaintiff:

         1. The specific injury complained of;

         2. How the specific standard of care was breached;

         3. What specifically the defendant should have done to meet the specific standard of care; and

         4. The inference that the breach of the standard of care proximately caused the plaintiff's injury; and

      (v) For the defendant:

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 3-2A-06D. Supplemental certificates of qualified experts, MD CTS & JUD PRO §...

      1. How the defendant complied with the specific standard of care;

      2. What the defendant did to meet the specific standard of care; and

      3. If applicable, that the breach of the standard of care did not proximately cause the plaintiff's injury.

(2) An extension of the time allowed for filing a supplemental certificate under this section shall be granted for good cause shown.

(3) The facts required to be included in the supplemental certificate of a qualified expert shall be considered necessary to show entitlement to relief sought by a plaintiff or to raise a defense by a defendant.

**Failure to file supplemental certificate of qualified expert**
(c) Subject to the provisions of this section:

(1) If a plaintiff fails to file a supplemental certificate of a qualified expert for a defendant, on motion of the defendant the court may dismiss, without prejudice, the action as to that defendant; or

(2) If the defendant fails to file a supplemental certificate of a qualified expert, on motion of the plaintiff the court may adjudicate in favor of the plaintiff on the issue of liability as to that defendant.

**Filing and service of certificate**
(d)(1) The Maryland Rules apply to filing and serving a copy of a certificate required under this section and in motions relating to a violation of this section.

(2) Nothing contained in this section prohibits or limits a party from moving for summary judgment in accordance with the Maryland Rules.

**Expert qualifications**
(e) For purposes of the certification requirements of this section:

(1) A party may not serve as a party's expert; and

(2) The certificate may not be signed by:

(i) A party;

(ii) An employee or partner of a party; or

(iii) An employee or stockholder of any professional corporation of which the party is a stockholder.

§ 3-2A-06D. Supplemental certificates of qualified experts, MD CTS & JUD PRO §...

**Documents forwarded to Department**

(f)(1) The clerk of the court shall forward to the Department of Health and Mental Hygiene copies of the certificates filed under this section.

(2) In the case of a complaint against a physician, the Department of Health and Mental Hygiene shall forward to the State Board of Physicians copies of the supplemental certificate of a qualified expert filed under this section.

**Credits**

Added by Acts 2004, 1st Sp. Sess., c. 5, § 1, eff. Jan. 11, 2005.

(C) 2013 Thomson Reuters. No Claim to Orig. US Gov.Works.
MD Code, Courts and Judicial Proceedings, § 3-2A-06D, MD CTS & JUD PRO § 3-2A-06D
The statutes and Constitution are current through all chapters of the 2013 Regular Session of the General Assembly.

End of Document                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works